BATES *et al.*, trustees, *et al. vs.* HOUSTON *et al.*

1. The wrongful and violent seizure of the edifice and property belonging to a church of a congregational form of government by a minority of the members, contrary to the wishes of a majority, the deposition of officers of the church and of trustees who held the property, and the retention and use thereof by the minority, to the exclusion of the majority, furnish good grounds for equitable relief.

2. Trustees of a church, appointed by the superior court, have *prima facie* a right to represent the trust committed to them, and to protect it from an improper and illegal diversion by others.

3. Where numerous parties have a common interest, a few may sue representing others.

Equity. Injunction. Churches. Corporations. Parties. Before Judge FLEMING. Chatham Superior Court. June Term, 1880.

To the report contained in the decision, it is only necessary to add that counsel for defendants in error insisted in argument that the parties complainant to the bill did not appear to be proper parties, that trustees for a church should be elected, not appointed (Code, §§2343, 2345); and that the complainants were not proceeding as members of the church, but as officers thereof, without setting out their powers as such.

J. R. SAUSSY; A. P. & S B. ADAMS, for plaintiffs in error.

CHISHOLM & ERWIN; TOMPKINS & DENMARK, for defendants.

SPEER, Justice.

The plaintiffs in error, Baker, Young; Butler, as trustees of "First African Baptist Church in Savannah," and McNish, Bowles, Mitchell and McIntosh, who with the

Bates *et al.*, trustees, *et al. vs.* Houston *et al.*

above named trustees are deacons of said church, in behalf of themselves and a large majority of the members of said church, complain against the defendants, Morse, Williams, Pettigrew, Jacks, Habersham, Jenkins, Haynes, Houston, Wright and Hook, all of said county. Complain-ants allege that they, in connection with one Campbell, are the legally constituted authorities and executive offi-cers of said church, according to the practice of church government and faith of that denomination. That your orators were appointed trustees by the superior court of said county, on the 23d of January, 1873, and until a few months ago, had peaceable possession of the church edifice, situated on lot number 19, Franklin ward, Savannah. That complainants, as deacons, have had the right for many years to manage the affairs of said church, to-wit: from their election. That by the doctrines and rules and prac-tices of said church, a majority have the control and man-agement of the church, and they have had the quiet use and peaceable possession of said church building until a few months before the filing of this bill, under the pastorate of one Campbell, who was called to the charge of the church and duly installed as its pastor. Complainants further charge that in 1877, while Campbell was tempo-rarily absent from the charge by permission, the defend-ants, being a small minority of said church, began a series of unlawful acts and unchristian behavior in said church, and after the return of Campbell, in 1877, in a turbulent and boisterous manner, disturbed the congregation and denied worship in said church, for which three were con-victed of the offense of disturbing said congregation in their worship.

That said defendants and their confederates, by illegal means and without authority, and contrary to the wish of a majority of the members, without notice or trial, pro-ceeded to expel your orators Young, Butler and Baker, and dropped from the diaconate your orators McNish, Bowles and McIntosh, and have assumed to elect Houston, Wright

and Hooker as trustees, and have deposed Campbell from the pastorate. That by reason of the continued indecent, boisterous conduct of defendants, your orators and a majority of members were forced to seek another place of worship, and have been deprived of the use and enjoyment of said church property. Your orators have requested defendants to give up said church property to the management of orators, and to demean themselves in a more becoming manner; but this defendants refuse to do, but, on the contrary, continue to hold possession of said church, and have refused to permit orators to conduct or manage the affairs of said church and have refused to permit Campbell to officiate. The prayer is that defendants may be restrained from using said church and premises, that they may be decreed to surrender same to complainants, the legal trustees of said property, to be used by said First African Baptist Church, under the pastorate of Campbell; that the deacons may be reinstated; that defendants be restrained from molesting the congregation in the use of said property. Also a prayer that defendants may be restrained from interfering with or hindering the said congregation from using said building in their worship according to the tenets, rules and doctrines of the "Baptist faith." On the hearing of said cause, on demurrer made orally, without plea or answer, the court dismissed the same, on the ground "there was no cause of action or case set forth in said bill." To this judgment complainants excepted and assign the same as error.

We cannot understand upon what principle the court based its decision in dismissing this cause under the facts set forth in this bill. Here were a number of complainants alleging that they were (a part of them) trustees, and all of them, officials of the First African Baptist Church, representing a majority of the membership of said church, who were recently in the peaceable use and possession of said church edifice, having control of its management, and worshiping under the ministry of a pastor duly elected

and installed, and that the defendants, by means unautho-
rised and illegal, by conduct boisterous and unbecoming
as Christians, have ejected complainants from said church,
deposed their pastor, and continue to hold said edifice and
premises illegally, contrary to the wishes of said complain-
ants and a majority of said membership. We know not
how these complainants can have redress for these alleged
wrongs, only by an appeal to the courts. The question
here sought to be settled and decided, is as to the use and
possession of this property—who is legally entitled to its
use and enjoyment as between these conflicting claimants,
the representatives of these two church factions. We
think the principle in this case is recognized and decided
in the case of Bouldin *vs.* Alexander, 15 Wallace, 131. In
the second head-note of that case, the court say:

"Although a withdrawal by one part of a church con-
gregation from the original body of it and uniting with
another church or denomination, is a relinquishment of all
rights in the church abandoned—*the mere assembling in
a church* (as *ex. gr.* the Baptist), where the congregational
form of government prevails, of a majority of a congrega-
tion, forcibly and illegally excluded by a minority from a
church edifice in which as a part of the congregation they
had been rightfully worshiping in another place—the
majority thus excluded maintaining still the old church
organization, the same trustees, the same deacons, is not
such a relinquishment, and the majority through the civil
courts may assert their right to the church property. 15
Wallace, 131.

In a congregational church (and such it is understood
the Baptist church to be) "the majority if they adhere
to the organization and the doctrines *represent the church.*"
The question here sought to be decided, is as to which of
these parties are entitled to the use, occupancy and enjoy-
ment of this church edifice and premises—the question
respects "temporalities" and "*temporalities*" *alone*. Fur-
ther, in 11 Heisk., 523, the court say: "A minority of
a congregation seizing the temporalities of a church and

assuming to be the church, cannot change the relation of the church and attach it to another denomination against the will of the majority, excluded by force or intimidation from their rightful share in the control of the affairs of the church. The wrongful act of such a minority holding possession of the church is subject to be redressed by the courts." U. S. D., vol. ix, 652.

Although the civil courts will not, in case of persons excommunicated by competent church authority, go behind that authority and inquire whether the persons have been regularly or irregularly excommunicated, the courts may inquire whether the expulsion was the *act of the church*, or of persons who were not of the church. 15 Wall., 131–9–40. When property is devoted to a specific doctrine the civil courts will, when necessary to protect the trust to which the property has been devoted, inquire into the religious faith and practice of the parties claiming its use, and will see that it shall not be diverted from that trust. 13 Wall., 689.

The right of the civil tribunals to interfere to protect beneficiaries in the use and enjoyment of their religious privileges in the use of church property, is recognized in the case of *Harris et al. vs. Pounds et al.*, decided at September term, 1879, of this court.

Questions have been made as to the parties to this bill set forth as complainants. We can only say, three of these parties complainant allege themselves to be trustees, appointed by the superior court of Chatham county for this church, and they certainly have a right, *prima facie*, to represent the trust committed to them and to protect it from an improper and illegal diversion by others, as they allege.

But the other complainants claim to represent, as the officials of the church, a majority of its members. It has been settled where numerous parties have a common interest a few may sue representing the others. 16 Howard, 288.

Let the judgment of the court be reversed.