C. B. PARTIN, *et al.*, v. A. F. TUCKER, *et al.,* as Trustees of Pine Grove Baptist Church.

172 So. 89.
Opinion Filed January 12, 1937.

*John H. Wahl,* for Appellants;

*Dickinson & Dickinson,* for Appellees.

BUFORD, J.—The decree appealed from is the result of dissension between members of Pine Grove Baptist Church, which was and is an unchartered religious assembly organized under the congregational plan of government. The meeting house known as "Pine Grove Baptist Church" was erected on a plot of land deeded by J. R. A. Tucker and wife to John J. Hodges, Samuel Hodges and Richard F. Tucker and their successors, Trustees of Pine Grove Baptist Church on the 20th day of May, 1886. After many years the members of the church became divided upon doctrinal questions. Those on one side are referred to as the Land Mark Baptists and those on the other side are referred to as the Missionary Baptists. Each side claims to

be the exponent of the original doctrines of the organization.

What the doctrine of either side is can be of no moment here. The courts are not concerned with the articles of faith of either, nor with the question as to whether or not the articles of faith or the religious doctrines of either are respected and observed.

The only question which is sought to be presented here which may be addressed to the courts is in regard to the right to control the church property. See Hackney v. Vawter, 39 Kan. 615, 18 Pac. 699; Fulbright v. Higginbotham, 133 Mo. 668, 34 S. W. 875; State v. Farris, 45 Mo. 183; Pickett v. Wells, 117 Mo. 503; Bates v. Houston, 66 Ga. 198.

The final decree appears to have been entered upon an amended bill of complaint, answer to the amended bill of complaint, testimony taken on such amended bill and answer, and testimony taken under an original bill of complaint and answer to same. The decree is in favor of the complainant and grants the relief prayed. There appears in the record no findings of facts, and therefore, we do not know upon what theory the final decree was entered.

The record shows that at a regular conference of the Church held on July 5, 1924, charges against several of the brethren were acted upon and at that meeting the Church withdrew from J. H. Wheeler, A. F. Tucker and G. G. Cowart and others. It appears that when a church of this sort withdraws from a member it means that the member may no longer affiliate with the Church and he has been put out of the Church.

The record shows that on Saturday before the first Sunday in October, 1924, the Church at a regular conference

reiterated its avowal of withdrawing from J. H. Wheeler, G. G. Cowart and A. F. Tucker.

It is alleged in the answer that C. B. Partin and Lemuel Hodges were duly elected Trustees by the congregation of the Church in the year 1907 and ever since have continued to hold office as such Trustees and that I. W. Nettles was elected third Trustee to fill vacancy caused by death of J. J. Hodges by the congregation in conference assembled in August, 1924.

It is further alleged that the congregation of Pine Grove Baptist Church on July 5th in conference duly assembled withdrew from, that is excommunicated the complainants, A. F. Tucker, J. H. Wheeler and G. G. Cowart. Yet, we find that A. F. Tucker, J. H. Wheeler and G. G. Cowart filed bill of complaint on January 22, 1925, seeking to oust Partin, Hodges and Nettles as Trustees of the possession of the church property and claiming the right to possession by reason of their election as Trustees on the 17th day of August, 1924, and that they procured a final decree in their favor.

It seems to us that the controlling principle of law applicable to this case was stated in the case of Watson v. Jones, 13 Wallace 679 (20 L. Ed. 666), as follows:

"Where a church is of a strictly congregational or independent organization, and the property held by it has no trust attached to it, its rights to the use of the property must be determined by the ordinary principles which govern voluntary associations.

"Where the local congregation is itself a member of a much larger and more important religious organization and is under its government and control and is bound by its orders and judgments, its decisions are final, and binding on legal tribunals.

"Courts having no ecclesiastical jurisdiction, cannot revise or question ordinary acts of church discipline; their only judicial power arises from the conflicting claims of the parties to the church property and the use of it."

In the body of that opinion Mr. Justice Miller said:

"The second class of cases which we have described has reference to the case of a church of a strictly congregational or independent organization, governed solely within itself, either by a majority of its members or by such other local organism as it may have instituted for the purpose of ecclesiastical government; and to property held by such a church, either by way of purchase or donation, with no other specific trust attached to it in the hands of the church than that it is for the use of that congregation as a religious society.

"In such cases where there is a schism which leads to a separation into distinct and conflicting bodies, the rights of such bodies to the use of the property must be determined by the ordinary principles which govern voluntary associations. If the principle of government in such cases is that the majority rules, then the numerical majority of members must control the right to the use of the property. If there be within the congregation officers in whom are vested the powers of such control, then those who adhere to the acknowledged organism by which the body is governed are entitled to the use of the property. The minority in choosing to separate themselves into a distinct body, and refusing to recognize the authority of the governing body, can claim no rights in the property from the fact that they had once been members of the Church or congregation. This ruling admits of no inquiry into the existing religious opinions of those who comprise the legal or regular organization; for, if such was permitted, a very small minority,

without any officers of the church among them, might be found to be the only faithful supporters of the religious dogmas of the founders of the Church. There being no such trust imposed upon the property when purchased or given, the court will not imply one for the purpose of expelling from its use those who by regular succession and order constitute the Church, because they may have changed in some respect their views of religious truth."

And, again, in the same opinion the learned Justice said:

"In this country the full and free right to entertain any religious belief, to practice any religious principle and to teach any religious doctrine which does not violate the laws of morality and property, and which does not infringe personal rights, is conceded to all. The law knows no heresy and is committed to the support of no dogma, the establishment of no sect. The right to organize voluntary religious associations to assist in the expression and dissemination of any religious doctrine, and to create tribunals for the decision of controverted questions of faith within the association, and for the ecclesiastical government of all the individual members, congregations and officers within the general association, is unquestioned. All who unite themselves to such a body do so with an implied consent to this government and are bound to submit to it. But it would be a vain consent and would lead to the total subversion of such religious bodies, if anyone aggrieved by one of their decisions could appeal to the secular courts and have them reversed. It is of the essence of these religious unions, and of their right to establish tribunals for the decision of questions arising among themselves, that those decisions should be binding in all cases of ecclesiatical cog-

nizance, subject only to such appeals as the organism itself provides for."

In the case of Shannon, *et al.,* v. Frost, *et al.,* Vol. 3 B Monroe's Reports (Sup. Ct. Ky.) 253, it was said:

"This Court, having no ecclesiastical jurisdiction, cannot revise or question .ordinary acts of church discipline or excision. Our only judicial power in the case arises from the conflicting claims of the parties to the church property and the use of it. And these we must decide, as we do all other civil controversies brought to this tribunal for ultimate decision. We cannot decide who ought to be members of the church, nor whether the excommunicated have been justly or unjustly, regularly or irregularly cut off from the body of the church.

"We must take the fact of expulsion as conclusive proof that the persons expelled are not now members of the repudiating church; for, whether right or wrong, the act of excommunication must, as to the fact of membership, be law to this Court.

"For every judicial purpose in this case, therefore, we must consider the persons who were expelled by a vote of the church, as no longer members of that church, or entitled to any rights or privileges incidental to or resulting from membership therein.

"As the conveyance from Crittenden was to the use of the Baptist Church, as an organized body of professing Christians in Frankfort, every member of that Church has a beneficial interest in the property thus conveyed, so long as he or she shall continue to be a member, but no longer. It is only as a constituent element of the aggregated body or Church, that any person can acquire or hold, as a *cestui que trust* any interest in the property thus dedicated to that Church. *Curd, et al., v. Wallace, et al.,* (7 *Dana,* 195).

Such is the effect of this conveyance to congregational uses, and such the civil law of our State; and upon this foundation alone, must our decision rest. The judicial eye of the civil authority of this land of religious liberty cannot penetrate the veil of the Church, nor can the arm of this Court either rend or touch that veil for the forbidden purpose of vindicating the alleged wrongs of the exscinded members. When they became members they did so on the condition of continuing or not, as themselves and their Church might determine. In that respect they voluntarily subjected themselves to the ecclesiastical power, and cannot invoke the supervision or control of that jurisdiction by this or any other civil tribunal.

"Then, not being now members of the Church to whose use the ground was conveyed, the appellants seem no longer to be entitled to any beneficial interest in that property, nor to any other right which this Court can either enforce or recognize; and consequently the old Church as organized at the date of that conveyance, and still subsisting, must be deemed to be entitled to the exclusive use and enjoyment of the property for all the purposes for which it was first dedicated."

The chief difference between the case at bar and the one just above cited is that in the instant case the expelled members became the complainants while in the Kentucky case the expelled members were the defendants.

It is observed that the deed conveying the Church site did not designate any particular belief but merely named certain persons as trustees of Pine Grove Baptist Church and it is also clear that the trustees named in the deed and those in orderly succession to such trustees were in control of the church affairs and the church property at the time of the institution of this suit.

In the case. of Nance, *et al.,* v. Busby, *et al.,* 91 Tenn. 303, 18 S. W. 874, 15 L. R. A. 801, Mr. Justice LURTON, speaking for the Court, said:

"When two factions in the same congregation disagree as to which is entitled to the control of the church property, and both sides profess adherence to the same faith and practices, the right must depend upon the will of the majority, unless there be shown some law, regulation, rule, or practice of the church determining otherwise."

And again in the same opinion he said:

"If the defendants have ceased to be of the 'faith and order' of the regular Primitive Baptist Church, it was by the taking out of the charter on the 12th of September, 1888, a fact subsequent to the acts of excommunication. The learned chancellor was of the opinion and so instructed the jury, that the merits of these acts of excommunication could not be inquired into. In this we certainly agree. But he was of opinion that the jurisdiction of the church to pronounce these sentences might be inquired into. He instructed the jury that all such exclusions must be in accordance both with the usages of the church and the law of the land. He left the jury. to grope amidst volumes of evidence as to the usage of this church, and discover as best they could the ecclesiastical law bearing on the question; but instructed them that excommunication from the church would be valid only when in pursuance of the usage of the church and the law of the land. As to the law of the land, he said to the jury, 'In this State this church nor any number of its members calling themselves "the church" had any right to expel or exclude C. W. Nance or W. L. Nance, or any of their adherents, without first notifying them, him or her at the time of trial and of the charges upon which the trial was to be had, so as to give them an opportunity

to be heard by himself and his witnesses before judgment.' How far this charge affected the result in this case is not clear. This church is an independent congregational church. Discipline is administered by the body of the congregation. It has no body of canon law, prescribing procedure in such cases. No written rules prescribe notice or require a trial. A majority of those members voting when the church sits in conference determines the result upon any motion or resolution disciplining a member."

And further, in that opinion, he said:

"The congregation to which complainants belonged was congregational and independent. It was a pure democracy. The power of excommunication reposed in the majority of the members voting at any conference. From its action there was no appeal. This fact may be a defect in the organization. It is not for us to say, nor for those affected by its judgment to complain. They voluntarily submitted themselves to the absolute power of a majority. They tacitly agreed to abide by and submit to such judgment. This church, when sitting in conference, was a judicature. It may have erred in construing the usage and practice of the church to justify a proceeding for expulsion without notice to the accused of the charges, and without giving him opportunity to vindicate himself. It, however, proceeded to adjudge excommunication. Its act was the act of the church. Complainants thereafter ceased to be members of this church. We cannot restore their names to the roll, or by mandamus compel recognition as members by the church which has repudiated them. Not being members of this church, they are not beneficiaries under the conveyance by which the church holds its church. They have, therefore, no such status as enables them to question the use of that property by the defendants."

In State, *ex rel* Johnson, *et al.,* v. Tulane Avenue Baptist Church (La. App.), 144 Sou. 639, it was held:

"By the great weight of authority the civil courts will not interfere in church government, or discipline, in ecclesiastical or spiritual relation with their members. The church authorities and such tribunals as they may set up for themselves are supreme in all spiritual matters and may arbitrarily expel from membership any individual with or without cause, as long as no civil rights are involved. In other words, the question of who shall be admitted to fellowship in any religious sect or order is one which concerns only the particular sect or order, and they are not required to worship with anyone whose presence is not agreeable. This is true, whether the expulsion of the individual be in disregard of the usage and practice of the church, or not."

In the case of Keyser, *et al.,* v. Stansifer, *et al.,* 6 Ohio 364, Mr. Justice LANE delivered the opinion of the court and said:

"If this land became the absolute property of this association, subject to no use except its general purposes, it is incident to the very nature of a corporation to hold such property at the will of the majority, if the charter of incorporation does not otherwise provide. It is theirs to dispose of, to retain or to occupy after their own pleasure. 5 Ohio 205. They would not be permitted to exclude their fellow-corporators. But they may occupy and manage as they please, admitting the minority to the same benefits as themselves.

"But this claim is not set up because the minority are excluded but because it is asserted the majority have deserted the principles under which the association was organized, by which they have ceased to be the 'First Baptist Church of Dayton.' It does not follow that they lose their prop-

erty by ceasing to entertain certain opinions. The declaration of faith under which they were organized, contains no attempt to bind them to abide in the same belief. It is shown in proof that each Baptist Church is in itself a whole, separate and independent—at liberty to form its own creed, and looking · to others for counsel and social intercourse only. The opinions of such a body cannot but change. To fix their fleeting wherries; to anchor them immovably in the stream of time is beyond human power; for the mind, at least, is free; ranging by its inherent strength through the boundless fields of knowledge, molding its belief according to its apprehension of the truth, and incapable of fixedness until the day when all truth shall be made known. And if it were possible it were wrong; to limit activity of mind is to set boundaries to human knowledge."

It appears to be the holding of a majority if not all, of the courts that to deprive those holding property, conveyed as this was, of the use and control of the property, it must be shown that the successor trustees have diverted the property to a use fundamentally different from that contemplated in its acquisition; and further, that a mere change in some of the articles of faith by the majority of the members of a congregation while adhering to the fundamental principles of Christianity upon which the organization is founded, and the use of the church property by such congregation teaching such changed articles of faith though adhering to the original fundamental principles of Christianity, will not constitute such a diversion of church property as to warrant the courts in interference. See cases above cited and also Manning, *et al.*, v. Yaeger, *et al.*, 203 Ala. 185, 82 Sou. 435; Ginn v. Jones, *et al.*, 230 Ala. 427, 161 Sou. 810.

The case of Watson v. Jones, *supra,* strongly supports this enunciation.

It appears to us that it must be conceded; (1) that when a religious congregation, such as is here involved, at a regular conference meeting withdraws from, or, in other words, expels members, that action is final and the courts cannot interfere to reinstate them, or to vest them with any power of control of church property; (2) that before trustees, or their orderly successors, may be deprived of the use and control for the purposes of the religious organization of property acquired as the property here involved was acquired, it must be shown that they have diverted the property to uses other than those contemplated in its acquisition and that such diversion will not result from a change adopted as to some articles of faith while the congregation adheres to the fundamental principles of Christian religion originally espoused.

Having reached this conclusion, it appears that the decree was erroneous because the record does not affirmatively show that the fundamental principles of the Christian religion adhered to by the congregation of Pine Grove Baptist Church at the time the deed was made to the trustees of such church have been abandoned by the successor trustees and those associated with and worshiping with them in this organization and because the record does affirmatively show that at a regular conference meeting of the church the complainants in this cause were expelled from Pine Grove Baptist Church and thereafter were possessed of no rights in the affairs of that church which can be adjudicated in the civil courts.

The decree is reversed with directions that a decree be entered not inconsistent with the views herein expressed.