FIRST FREE WILL BAPTIST CHURCH OF BLOUNTSTOWN, INC., a corporation, and C. A. PARRISH, J. J. LAYFIELD, T. E. PARRISH, ROY WILLIS, and J. W. CAUSEY, as Directors of First Free Will Baptist Church of Blountstown, Inc., v. WILL FRANKLIN, F. M. KNIGHT, W. J. MEARS, W. M. CROCKRAN, and MRS. EFFIE MEARS.

4 So. (2nd) 390
Division A
Opinion Filed October 21, 1941
Rehearing Denied November 8, 1941

*H. V. McClellan* and *James H. Finch,* for Appellants; *Marion B. Knight* and *Weldon G. Starry,* for Appellees.

CHAPMAN, J.—The record here discloses that the Blountstown First Free Will Baptist Church was organized during the year 1919, and on July 26, 1920, G. F. Tucker and wife, Mary Ida Tucker, conveyed to the First Free Will Baptist Church of Blountstown, and E. S. Streetman and J. W. Causey, Deacons of said Church, and their successors, certain real estate situated in the Town of Blountstown; and an old school house was converted into a church building and religious services were held therein for a number of years; and in 1933 or 1934 the church roll contained approximately one hundred members.

The Salem Association of which the Blountstown Church was a member, along with several other churches of similar faith located in West Florida. held quarterly and annual meetings and well kept minutes of some of these annual meetings appear as evidence in the record. The membership of the Blountstown Church, in 1933 or 1934, divided over the

selection of a minister. The church prior and sub sequent thereto, was a member of the Salem Association of Free Will Baptists. The Salem Association in turn possessed membership in the National Association of Freewill Baptist Churches.

Pertinent and material portions of Articles of Faith and Rules for Church government of the Freewill Baptist Church, as contained in "Treatise of the Faith and Practice of the Free Will Baptist," are viz:

"THE HOLY SCRIPTURES

"CHAPTER III. *Divine Government and Providence.*

"1. God exercises a providential care and superintendence over all his creatures, and governs the world in wisdom and mercy, according to the testimony of His Word."

CHAPTER I. *The Church*

"Section II.—Officers of The Church.

"The church then proceeds to elect its officers, which are a clerk, a treasurer, a pastor who acts as moderator in all church meetings, and a board of deacons, who, with the pastor, clerk and treasurer, constitute a committee to promote order, activity, attendance on the means of grace, and efficient discipline of the church. Deacons should possess sound piety, good business capacity, and large benevolence; they should be ordained by prayer, and the laying on of hands by the presbytery; they hold their office for life, or during the maintenance of good moral character and sound doctrine; they assist at baptism and the Lord's Supper, have care of the poor, and conduct religious meetings, in the absence of the pastor.

"Section III.—Meetings of the Church.

. . .

"(5) Questions of fellowship and expulsion are settled by vote of the majority present, provided that if only a minority of the resident membership is present, a majority of all such members at a fuller meeting may reconsider the action and re-investigate the subject. But a vote of the majority of all the resident members is always final; and the Quarterly Meeting has no power to reverse it, but may, if deemed necessary, withdraw the hand of fellowship from a church as a whole when its action is inconsistent with sound doctrine of Christian policy.

. . .

"Sec. V.—Government of the Church.

"1. The local church is an independent body, so far as it relates to its own government, the transaction of its business, the choice of its officers, and the discipline of its members."

CHAPTER III. *Quarterly Meetings*

"Section III.—Discipline of the Quarterly Meeting.

"1. A Quarterly Meeting cannot deprive a church of its independent form of government, nor its right to discipline its own members, nor labor with individual members of churches as such; but, as the church is a member of the Quarterly Meeting, it has the right to labor with the church as a body in case of unscriptural or disorderly walk, and may determine whether the church is worthy of its fellowship or not."

"CHAPTER IV. *Yearly Meetings or Associations*
. . .

"Section III.—Discipline of Yearly Meeting or Association.

"1. Every Yearly Meeting or Association has the same right to discipline the Quarterly Meetings of which it is composed, as a Quarterly Meeting has to discipline the churches which belong to it, and for the same reasons. The Yearly Meeting or Association cannot reverse the decisions of a Quarterly Meeting, nor labor with individual churches; but it can labor with the Quarterly Meeting as a body, in case the Quarterly Meeting pursues an unscriptural or disorderly course."

"CHAPTER V. *The Eastern General Association and*
*The Western General Association United*
*Form The National Association.*

"Sec. 1.—Design of the Association.

"1. The Eastern General Association and the Western General Association are designed to comprise all the Annual Associations in the Free Will Baptist denomination, and to complete the organization of the connection in one national body; to consolidate the body by harmonizing its different parts, keeping a common interest in view, and producing unity of sentiment and discipline; to concentrate its strength in the common cause of the Redeemer; and, by a fraternal inter-change of views among its members, to promote growth in grace and knowledge of Gospel Truth."

"Constitution

. . .

"Article V.—*Discipline.*

"This National Association shall have the right to settle any question of discipline, doctrine or usage that may properly come before it from either of the bodies composing said organization of the National Association of the Free Will Baptist Church, or act upon any appeal that may be made by any body belonging to this National Association. Said appeal shall have been written and properly signed by the constituent body or bodies, and its decision shall be final. Such appeals are to come before the National Association, after having been appealed from the lower body to the next higher body.

"Sec. 2. All appeals coming before the National Association may be settled in either of the following ways: (1) By the National Association when sitting in a Committee as a whole. (2) By a special committee whose report shall be voted on without discussion."

An allegation in the answer of the defendants is to the effect that during the year 1930 the Blountstown Association merged with the West Florida Liberty Association of Free Will Baptist, and there is testiingmony to sustain this view. There is testimony showing that the Blountstown church had membership in the Salem Association of Free Will Baptist Churches. The Articles of Faith and rules for church government and the disciplining of members of the Salem Association and the West Florida Liberty Association are substantially the same.

The inability of the members of the Blountstown church to agree on a pastor during the year 1933 was

subsequently referred to the Executive Committee of the Association for a decision by the Blountstown church according to the rules of the Association controlling the church. The report of the Executive Committee on the controversy could be approved or disapproved by the Association when in annual session. The possession, or right of possession, of the Blountstown church property here involved turns on the authority or power of the Executive Committee of the Association to investigate and the power of the Association to approve or disapprove the report thereof when functioning under the rules controlling the several churches of the Association.

Counsel for appellants pose for a decision of this Court the question viz: When a Free Will Baptist Church is shown to be an independent, autonomous body, governed as to its internal affairs and in all other matters by a majority action of its members, and such church expels certain of its members, is it competent for a church association, without the express consent of such church, and contrary to the expressed wishes of the majority of such church assembled, to review and reverse the action of the church in expelling such members and to reinstate such members?

Counsel for appellees contend that in the case at bar there is no diversion of the use of the church property from its original purpose; that there are no civil rights involved when a person was accepted into membership of the Blountstown church he thereby submitted and agreed to and was bound by the Articles of Faith, the law of the church and the rules for church government, inclusive of the disciplining of the membership. In other words, such members

submitted themselves to the ecclesiastical jurisdiction of the Free Will Baptist Church of Blountstown, the quarterly conferences thereof, the State and the several Associations of which the church was a member. If the record sustains the contention of counsel for appellees then the decere appealed from must be affirmed.

The West Florida Liberty Free Will Baptist Association of the Eastern Division of the National Original Free Will Baptist Churches of the United States heard on appeal of the controversy of the membership of the Blountstown Free Will Baptist Church growing out of the inability of the membership to agree on a minister for the Church at Blountstown, when the following part of a resolution was adopted:

"THEREFORE BE IT RESOLVED: by this the West Florida Liberty Freewill Baptist Association of the Eastern Division of the National Association Original Freewill Baptists of the United States, as the Exclusive Final Governing Body of the First Freewill Baptist Church of Blountstown, Florida, assembled at its Fifty-first Annual Session on this the 13th day of October, 1939, at Spring Hill Church, Holmes County, Florida; that we inform all and singular the courts of Florida that the First Freewill Baptist Church of Blountstown, Florida, now composed of Sixty-one members, being the church increased from the nineteen members declared to be the entire membership by the Executive Committee on January 18, 1934, in good standing and order under the leadership of W. J. Starry and W. M. Crockran as deacons does constitute the entire and exclusive membership of the entire and exclusive membership of the First Freewill Baptist of Blountstown, Florida, and as such should

be entitled to the free and exclusive use of all church buildings and property, unmolested by any former member or members or their followers, and as such are entitled to the protection of the laws of the state of Florida in their Worship of God and protection of their property. And, that we further inform the courts that any organization or independent body formed by any of the former members of said church declared out of order are not entitled to Fellowship or Membership with any Freewill Baptist Church Association, nor to call themselves Freewill Baptist Church members, nor should they be entitled to the use of any church building or property belonging to said First Freewill Baptist Church of Blountstown, and its membership, in good standing, insofar as this Association is concerned."

The rules of conduct for church government above cited provide for a review, consideration and determination of the controversy between the members of the Blountstown church. When membership was accepted therein, they submitted themselves to the ecclesiastical jurisdiction of the church. An appeal was taken and a ruling thereon was entered. It is not here shown that the appellants had reviewed or attempted to have reviewed by the National Association the above order. The law appears to be settled that in the absence of a showing of fraud, collusion or arbitrariness on the part of the church authorities having jurisdiction of the controversy, the courts will not interfere. See Partin v. Tucker, 126 Fla. 817, 172 So. 89; Watson v. Jones, 13 Wall. 679, 714, 729, 20 L. Ed. 666; Gozales v. Roman Catholic Archbishop, 280 U. S. 1, 50 Sup. Ct. 5, 24 L. Ed. 131; Mitchell v. Church of Christ at Mt. Olive, 221 Ala. 315, 128 So. 781; 70

A.L.R. 71, and annotations at page 75 *et seq.*; 54 C. J. 89-90; par. 190, 23 R.C.L. pages 441-2, pars. 18 and 19.

Counsel for appellants orally at the bar of this Court and in briefs emphasized the fact that the membership of the Blountstown church was an independent organization and controlled itself solely by the adopted views of the majority of said membership. Two witnesses offered by the appellants so testified and pointed out that the Executive Committee of the Association when called to hear the controversy between the membership and when a faction declined or refused to abide by such a ruling as would be made, then the Committee was without authority to proceed further. Such a view appears compatible with equity, justice and the principles of a pure democracy, but in light of the provisions of Art. V of the Constitution adopted by the church the entire membership, inclusive of the appellants, submitted themselves to the ecclesiastical jurisdiction of the church, which it exercised by the adoption of the aforesaid resolution.

We fail to find testimony in the record to sustain fraud, collusion or arbitrariness in the expulsion of the appellant members of the Blountstown church.

The decree appealed from is hereby affirmed.

BROWN, C. J., WHITFIELD and ADAMS, J. J., concur.