## ST. JOHN'S PRESBYTERY, et al v.
## CENTRAL PRESBYTERIAN CHURCH, et al.

Circuit Court, Pinellas County.

September 29, 1955.

Ralph Richards, Clearwater, and William C. McLean, Tampa, for plaintiffs.

Byron T. Sauls, St. Petersburg, for defendants.

ORVIN L. DAYTON, Jr., Circuit Judge.

During the year 1953, Central Presbyterian Church of St. Petersburg, Florida, withdrew its membership from the organization of Presbyterian churches in the south known as the Presbyterian Church in the United States. The action was taken at a congregational meeting called for that purpose. Plaintiffs in their brief concede the propriety of the action taken, as to withdrawal of membership, by their short and succinct statement of the question now before this court for determination—"There is no question about the right of the members of the Central Presbyterian Church to withdraw from the Presbyterian Church U. S. The question is whether or not, in so withdrawing they could take the church property with them."

This controversy revolves about the ownership of the real property upon which the church buildings are located, and the funds from the trust established by the will of the late H. H. and Harriet Victory.

The history of the defendant church is that it was established by the First Presbyterian Church of St. Petersburg and for a while received financial aid from the First Church. The original deed of conveyance was to the "Trustees of the West Central Presbyterian Church and their successors." The church was later incorporated under the laws of Florida and title to the realty was then conveyed to "Central Presbyterian Church of St. Petersburg, Florida, a corporation."

Nowhere within the four corners of any of these deeds can be found any language which indicates that any trust was sought to be created. The deeds were absolute deeds of conveyance to the grantees named in each instrument, the last grantee being Central Presbyterian Church of St. Petersburg, Florida, a corporation.

The will of H. H. and Harriet Victory, deceased, directs their trustee to pay over the balance of funds remaining after certain bequests to certain beneficiaries, including "Central Presbyterian Church, St. Petersburg."

None of the instruments includes any such language as "for the use and benefit" of any other person.

Plaintiffs contend that the statute of frauds, sections 689.05, 689.06, Florida Statutes 1953, does not forbid the creation of an implied or constructive trust in favor of St. John's Presbytery for the benefit of those church members who remain faithful to the faith and discipline of the Presbyterian Church in the United States.

In Reid v. Barry, 112 So. 846, the Supreme Court of Florida construed a deed which conveyed lands in Orange County to "Right Reverend John Moore, Bishop of St. Augustine, Florida, and his successors in office and assigns forever." The Court held that title passed to the Bishop of St. Augustine and his successors in office, but did not create a trust for the use and benefit of the Catholic Church. The Court said at page 857—"There is no ambiguity on the face of the deed which could properly be explained by parol so as to make it an express trust. It is merely a deed for a valuable consideration, absolute on its face, to the then Bishop of St. Augustine and 'his successors in office and assigns forever,' in their official capacity; and both the habendum and covenants show that the full legal title was intended to be conveyed, not to the

church, but to the then Bishop and his successors in office . . . Nor does the language of the deed create an implied trust."

It therefore appears that defendants' contention that extrinsic evidence cannot be taken to vary the terms of a conveyance absolute on its face is well taken. Each instrument of conveyance is absolute on its face. Title is conveyed to Central Presbyterian Church of St. Petersburg, Florida, a corporation. Likewise the will of H. H. and Harriet Victory, deceased, while not identifying the defendant church as a corporation, is absolute on its face as to its direction to the trustees of the estate to pay the funds to Central Presbyterian Church of St. Petersburg. There is no language in either instrument susceptible of construction so as to establish a trust for the benefit of plaintiffs.

That such construction is compatible with the form of government of the Presbyterian Church U. S. is seen by reference to the Book of Church Order. Paragraph 163 contains the following reference to an incorporated church—"To the officers of the corporation may be given by the charter and by-laws of the corporation any or all of the following responsibilities: The buying, selling and mortgaging of the property for the church, the acquiring and conveying title to such property, the holding and defending title to the same, the managing of any permanent special funds entrusted to them for the furtherance of the purposes of the church, provided that such duties do not infringe upon the powers and duties of the Session or of the Board of Deacons. In buying, selling and mortgaging real property *such officers shall act solely under the authority of the corporation*, granted in a duly constituted meeting of the corporation." (Emphasis supplied).

The Book of Church Order, ch. XIII, par. 57, contains the following reference to the jurisdiction of church courts—"These assemblies are altogether distinct from the civil magistracy, nor have they any jurisdiction in political or civil affairs. They have no power to inflict temporal pains and penalties, but *their authority is in all respects moral or spiritual."* (Emphasis supplied).

The government of the Presbyterian Church in the United States (southern) differs from that of the Presbyterian Church in the United States of America (northern). The latter organization holds control over the property of its member churches by authority of its constitution, ch. XXVII, par. IX, X, Constitution of the Presbyterian Church of the United States of America.

Such is not the case in the Presbyterian Church U.S. The churches which comprise that organization are congregational in

nature, and each has the right to control its own property. Book of Church Order, supra.

Watson v. Jones, 20 L. ed. 666, decided by the Supreme Court of the United States, and relied on strongly by plaintiffs, is not in point since it deals with the constitution and government of the northern Presbyterian Church. We are here concerned with the constitution and government of the southern Presbyterian Church which has existed separately from the northern church since December 4, 1861. On that date the southern churches withdrew from the northern church and later formed the Presbyterian Church in the U. S. The testimony of one of the witnesses for plaintiffs here is that at the time of such withdrawal, the southern churches took their property with them.

The Supreme Court of Florida, in Partin v. Tucker, 172 So. 89, which was concerned with a schism of the members of a Baptist church on questions of doctrine and the right of a majority of the church members to control the church property, said at page 93— "It appears to be the holding of a majority if not all of the courts that to deprive those holding property, conveyed as this was, of the use and control of the property, it must be shown that the successor trustees have diverted the property to a use fundamentally different from that contemplated in its acquisition; and further that a mere change in some of the articles of faith by the majority of the members of the congregation while adhering to the fundamental principles of Christianity upon which the organization is founded, and the use of the church property by such congregation teaching such changed articles of faith though adhering to the original fundamental principles of Christianity, will not constitute such a diversion of the church property as to warrant the courts in interference."

The record here clearly shows that the defendant church has not diverted the church property to a use fundamentally different from that contemplated in its acquisition. The church continues to hold services and adheres to the fundamental principles of Christianity. In fact, the pastor testified that he considered his preaching to be that of the doctrine of the Presbyterian Church U. S. at the time he was ordained. The principal difference appears to be that the defendant church is no longer a member of the Presbyterian Church, U. S.

It is the opinion of this court therefore that—

1. The withdrawal of defendant church from the Presbyterian Church of the United States was properly and regularly done.

2. The deeds of conveyance under which the defendant church holds title are absolute and convey title to the realty in fee simple to the Central Presbyterian Church of St. Petersburg, Florida, a corporation, and create no trust for the use and benefit of the plaintiffs.

3. The will of H. H. and Harriet Victory conveys trust funds directly and absolutely to the defendant church and such funds are not held in trust for the use and benefit of plaintiffs.

4. The government of the Presbyterian Church in the United States as expressed in the Book of Church Order, contains no reference to any jurisdiction of the Presbytery or other church courts over property owned by an individual church, but limits their jurisdiction to matters of a moral or spiritual nature.

5. The defendant church continues to adhere to the fundamental principles of Christianity, and has not diverted any of its property to any use fundamentally different from that contemplated in its acquisition.

6. The relief sought by plaintiffs, therefore, will be denied.

An appropriate decree may be prepared from this opinion.