TOM ARNOLD EX REL. STATE OF FLORIDA, *Plaintiff in Error,*
v. HENRY R. CHASE, SHERIFF OF DADE COUNTY, FLORIDA,
*Defendant in Error.*

Division B.

Opinion Filed December 8, 1927.

*John M. Murrell* and *Fred H. Kirtley,* Attorneys for Plaintiff in Error;

*J. B. Johnson,* Attorney General; *Roy Campbell,* Assistant, and *Clark, Clark & Maiden,* Attorneys for Defendant in Error.

BUFORD, J.—In this case an affidavit was filed in the office of the County Judge of Dade County, Florida, by one E. G. Sewell attempting to charge one Tom Arnold with the offense of criminal libel. The affidavit was in the folowing language:

"STATE OF FLORIDA,
COUNTY OF DADE:

Before the subscriber, W. F. Blanton, County Judge in and for the County of Dade and State of Florida, personally came E. G. Sewell, who being duly sworn says that one Tom Arnold on the 22nd day of April, A. D. 1927, in the County and State aforesaid did then and there commit the offense of publication of a libel as follows, to-wit: 'That the said Tom Arnold being then and there on the date aforesaid, Managing Editor of a certain Weekly Newspaper known and called the Miami Tribune, published at Miami, Florida, did publish a certain libelous and defamatory article concerning Deponent, the said E. G. Sewell, in the said paper, the Miami Tribune, under the heading 'Forgery and Duplication Makes Sewell's List Impressive,' and that among other things in the said article the said Tom Arnold published following language: 'Duplication is pardonable

—that might happen in any petition circulated by hirelings or even friends; duplicating might be accepted at face value and go at that; but this forgery must be brought to light as showing the candidate's lack of qualification by showing also the kind of henchmen he sometimes selects to do his deeds for him;' that also in said article the said Tom Arnold did publish other and further statements to the effect that the said E. G. Sewell was a party to the forgery of the name of one George Moses to the petition of the said Sewell who was then and there a candidate in an approaching primary election for City Commissioner in and for the City of Miami, Dade County, Florida, thereby charging the said Sewell with being party to the Commission of a Felony; that in the same issue of the said paper, to-wit: The Miami Tribune, under date of April 22nd, 1927, the said Tom Arnold did publish an article under the heading 'Sewell's Harbor Blockade suit is being heard' and in the said article the said Tom Arnold did publish of and concerning Deponent, the said E. G. Sewell, in the said article among other scandalous, libelous and defamatory language the following: 'And since Sewell is the brass collared Spaniel whose chain is held by Frank B. Shutts, it is possible that Mr. Shutts could explain that.' That at the time of the said publications, the Deponent, E. G. Sewell, was a candidate for City Commissioner of the City of Miami duly qualified and to be voted for in the primary election to be held in the said City on the 3rd day of May, A. D. 1927, and that each of the said publications and the charges made in the two articles referred to are such as to incite to violation of the criminal law and was such as to cause an injury to Deponent, the said E. G. Sewell, of such a nature and extent as to render a breach of the peace imminent or probable, therefore that the said Tom Arnold, Managing Editor of the said The

Miami Tribune, a Weekly Newspaper publication as aforesaid, then and there became and was guilty of the publication of a libel contrary to the form of the Statutes of the State of Florida in case made and provided.

E. G. SEWELL.

Sworn to and subscribed before me this 30th day of April, A. D. 1927.

W. F. BLANTON,<br>County Judge.

(County Judge's Seal) ''

Upon this affidavit a warrant was issued. The defendant was brought before the court and moved to quash the affidavit. The motion was denied. Thereupon the defendant waived preliminary hearing and being remanded to the custody of the sheriff, sued out writ of *habeas corpus*. It is noted that the article published is not set forth in the affidavit, but excerpts therefrom are quoted. These quotations do not include the name *E. G. Sewell* but only the name Sewell without the allegation that this meant E. G. Sewell. The affidavit alleges that Tom Arnold ''being Managing Editor did publish, etc., etc.'' This allegation only charges that Tom Arnold was publisher of the paper, not that he knowingly published etc., etc.—*Non constat* Arnold did not know of the publication and though he might be liable civilly, he would not be liable criminally if he did not know of the publication.

There is a statement in the record that the affidavit was allowed to be amended at the hearing before the County Judge and that the same amendment was allowed by the Circuit Judge in the *habeas corpus* proceeding on hearing. We cannot consider this alleged amendment as having any force or effect because it was allowed after the date of the *jurat* and after the warrant was issued and no new warrant appears to have been issued after the amendment of

the affidavit. Aside from this, it appears that the amendments would not have cured the defects in the affidavit if such amendments had been properly and timely made.

It will be observed that the affidavit alleges a state of facts under which the publisher of the alleged libel is placed within what is known in law as a qualifiedly privileged class. It is a well settled rule that communications relating to the public welfare, if made in good faith, are privileged. Also where one becomes a candidate for public office he must be considered as putting his character in issue so far as it may affect his fitness and qualifications for office and the publication of truth in regard to his qualification for the purpose of advising electors is not libel. State v. Keenan, 111 Iowa 286, 82 N. W. 792; State v. Balch, 31 Kans. 465, 2 p. 609; State v. Greenville Publishing Co. 179 N. C. 720, 102 S. E. 318. This privilege, however, may be lost if the communication exceeds what the occasion requires and is fostered by malice. The comment or criticism must be fair and free of malice. State v. O'Donnell, 141 La. 887, 75 Sou. 811; Commonwealth v. Pratt, 208 Mass. 553, 95 N. E. 105. The privilege does not embrace the right to make false statements of fact, to attack the private character of public men or falsely to impute to them a want of loyalty or misconduct in office. People v. Turner, 28 Cal. A766, 154 Pacific 34.

While the words alleged to have been used when applied to any particular individual would destroy the privilege, they do not sufficiently impart or imply malice as to dispense with the necessity of alleging malice in an affidavit attempting to charge a *criminal* offense.

Section Thirteen of Our Bill of Rights is as follows:

"Every person may fully speak and write his sentiments on all subjects, being responsible for the abuse of that right, and no laws shall be passed to restrain or abridge

the liberty of speech or of the press. In all criminal prosecutions and civil actions for libel, the truth may be given in evidence to the jury, and if it shall appear that the matter charged as libelous is true, and was published for good motives, the party shall be acquitted or exonerated.''

We must observe that motive is a potent factor as to the guilt of one sought to be charged with criminal libel. In such cases especially when committed in qualifiedly privileged communications, malice is a necessary element and, therefore, malice must be alleged. Having been alleged, it may be proved in many ways. In fact, the words or statement as published may furnish their own proof of malice. State v. Pape, 96 Atlantic 313. See 17 R. C. L. 332, and cases their cited; also Coogler v. Rhodes, 38 Fla. 240, 21 Sou. 109; Abraham v. Baldwin, 52 Fla. 151, 42 Sou. 591.

The allegation of the affidavit embraced in the following words:

''That the said Tom Arnold being then and there on the date aforesaid, Managing Editor of a certain Weekly Newspaper known and called the Miami Tribune, published at Miami, Florida, did publish a certain libelous and defamatory article concerning Deponent, the said E. G. Sewell, in the said paper, The Miami Tribune, under the heading 'Forgery and Duplication Makes Sewell's List Impressive,' and that among other things in the said article the said Tom Arnold published following language: 'Duplication is Pardonable—that might happen in any petition circulated by hirelings or even friends; duplicating might be accepted at face value and go at that; but this forgery must be brought to right as showing the candidate's lack of qualification by showing also the kind of henchmen he sometimes selects to do his deeds for him;' that also in said article the said Tom Arnold did publish other and further statements to the effect that the said E. G. Sewell was

a party to the forgery of the name of one George Moses to the petition of the said Sewell who was then and there a candidate in an approaching primary election for City Commissioner in and for the City of Miami, Dade County, Florida, thereby charging the said Sewell with being party to the Commission of a Felony;'' may be considered as surplusage because it in no wise charges any libelous publication. The remaining part of the affidavit attempts to charge a libel to have been committed in the publication of the following words, to-wit:

''And since Sewell is the brass collared Spaniel whose chain is held by Frank B. Shutts, it is possible that Mr. Shutts could explain that.''

The affidavit does not allege any innuendo conveyed by the use of this language. The language alleged to have been published would not by any reasonable person be given its literal meaning, but would reasonably, logically and almost necessarily be construed as a metaphor or figure of speech, meaning that E. G. Sewell was under the domination or control of Frank B. Shutts. There appears no statement in the quoted publication that Frank B. Shutts was a vile or dissolute person, or that his influence or domination was corrupt or immoral. There is no allegation that the publication was made maliciously. Therefore, we must hold that the affidavit fails to charge a *criminal* offense.

In *Ex parte* Amos, a case decided at the last term of this Court and reported in 112 Sou. 289, this Court say: ''When a person is held under color of criminal process he is entitled to his discharge from custody upon a writ of *habeas corpus* if the act with which he stands charged, or of which he has been convicted, is not in law a crime.'' See Kennerley v. Hennersey, 68 Fla. 138, 66 Sou. 729, 19 A. L. R. 1468.

Malice is an essential element of the crime attempted to have been charged against the petitioner, and this element

of the crime is not charged in the affidavit. See State v. Payne, 104 S. E. 288, 19 A. L. R. 1465; State v. Pape, 96 Atlantic 316, 3 Bishop's New Criminal Procedure (2nd Ed.) Sec. 783, sub-head 3; Newell, Slander and Libel (3rd Ed.) Sec. 1116; 2 Wharton Precedence of Indictments and Pleas (4th Ed.), page 488; 2 Archbald Criminal Practice and Pleading (8th Ed.), page 1038; 1 Abbotts Forms of Pleading (2nd Ed.), page 1363; 37 Corpus Juris 149; State v. Roberts, 16 Dela. 450, 43 Atlantic 252.

We, therefore, must conclude that the affidavits upon which the petitioner was deprived of his liberty failed to state a criminal offense against the laws of the State of Florida, and the judgment remanding him to the custody of the Sheriff should, therefore, be reversed, and it is so ordered.

Reversed.

WHITFIELD, P. J., AND TERRELL, J., concur.

ELLIS, C. J., concurs in the opinion.

STRUM AND BROWN, J. J., dissent.

BROWN, J., dissenting.

While inartificially drawn, the affidavit and warrant did not wholly fail to state an offense. The writ of *habeas corpus* should not be used as a substitute for a motion to quash, or writ of error, and the action of the court below should therefore, in my opinion, be affirmed. In re: Robinson, 73 Fla. 1068, 75 So. 604.

STRUM, J., concurs.