66 So.2d 241 (1953)
LOEB
v.
GERONEMUS et al.
Supreme Court of Florida, Division A.
June 23, 1953.
Rehearing Denied July 15, 1953.
*242 Carl Loeb pro se.
Joseph A. Varon, Hollywood, for appellees Clement Geronemus, Max Bohrer, Bernard Milloff and Bernard Weinkrantz.
Ella Jo Stollberg, Hollywood, for appellee Joseph Baum.
SEBRING, Justice.
The plaintiff below has appealed from a judgment entered upon a motion to dismiss a second amended complaint containing six counts.
Since each of the first four counts of the second amended complaint refers to separate and distinct utterances on the part of individual defendants, we concur in the ruling of the court below that as to these counts there was a misjoinder of defendants.
Count six, which appears to contain essentially all of the allegations relating to the cause of action for conspiracy to defame, is substantially as follows:
The plaintiff was a member of the Jewish Community Center of Hollywood, Florida, and a member of the B'nai B'rith Lodge of that city. All of the defendants were either members or officers, directors or governors of the Center and of the Lodge. The defendants maliciously conspired together to compose and fabricate false accusations against the plaintiff, to publicly charge the plaintiff with such accusations, to publish, circulate and distribute such false accusations and charges, and upon the basis of such false accusations and charges to deprive him of his membership and expel him from the Center and Lodge.
Pursuant to this scheme and conspiracy the defendants made, issued, initiated, authorized, published, distributed or circulated the following false, fraudulent, malicious and slanderous statements, with the intent thereby to hold the plaintiff up to public hatred, scorn, ridicule, scandal, and disgrace, and to defame the plaintiff and to induce an evil opinion of him in the minds of right-thinking persons, thereby depriving the plaintiff of their confidence and friendly intercourse:
The defendant Geronemus, on March 5, 1952, at a public meeting held at the Jewish Community Center, falsely stated in respect to the plaintiff that "He should be expelled because he is not a Jew and that he causes dissension and his bad behavior and activities are detrimental to the lodge."
All of the defendants on April 17, 1952, caused to be sent to the plaintiff a letter notifying him "to appear before the Board of Governors and officers of the Jewish Community Center of Hollywood, Florida, on Sunday, April 20th at 2:00 p.m. to answer charges brought against the plaintiff." This letter was not authorized by the duly elected officers of the Center. Moreover, it was without basis in fact; was contrary to the constitution, charter and by-laws of the Center, did not inform the plaintiff of the charges and accusations to be brought against him, and did not give the plaintiff an adequate opportunity either to examine the charges or prepare a defense. On April 18, 1952, the plaintiff, in response to the letter, advised the president and the Board of Directors of the Center that the letter was fraudulent, not authorized by the officers and directors of the Center and that because of a prior engagement he would not be able to attend the meeting. He also requested of the defendants that he be given a detailed statement of the charges and accusations *243 and be given ten days in which to prepare a defense.
On April 20, 1952, the defendant Geronemus, at a public meeting of the Board of Governors of the Center said: "Loeb is a bad example for our children. His scandalous activities are a bad example. He is a disgrace to any Jewish Organization. He should be expelled by a unanimous vote of all of us here." At the same meeting the defendant Baum stated, "I agree we should show the world we don't tolerate evil conduct like Mr. Loeb's. I too think we ought to take another vote and make it unanimous to expel him." At the same meeting the defendant Weinkrantz said: "It's all or nothing. If we can't get a unanimous vote to throw him out, let's drop the whole thing. Loeb is undermining the institution and he is a troublemaker. We can't leave a doubt in the public's mind about this and it means we must unanimously expel him."
On April 21, 1952, the defendants falsely and maliciously caused to be written and circulated a letter in which it was stated: "Carl Loeb is hereby expelled as a member of the Jewish Community Center * * * and * * * is not permitted to enter upon or trespass upon the property or premises of the Jewish Community Center of Hollywood, Florida, from this day forward * * *." After the letter was written, the defendants directed their alleged secretary, the defendant Weinkrantz, to publish and distribute to the newspapers of Hollywood, Florida, and adjacent municipalities the contents of the letter and also instructed him to state to the employees, reporters and editors of said papers that "the accusations against the plaintiff were so bad they could not be repeated or published." Thereafter, the aforesaid statements and letter were published and circulated through these newspapers, which also carried news items with reference to the expulsion of the plaintiff from the Jewish Community Center and the ban against his entering the premises.
On April 28, 1952, at a public gathering held at the Center, the defendant Bohrer made the statement in respect to the plaintiff, "He is a man of low moral character and no one here would permit him in his home socially, and that is why we expelled him." After this meeting adjourned Bohrer also made the public statement: "I made the motion to expel Loeb. He is a bad actor. Somebody told me he had to leave Chicago. No respectable person will have anything to do with him, I am sure. I am embarrassed by his being a member of the Center. It casts bad reflections on me. I am going to have him expelled from B'nai B'rith Lodge # 1662 also."
All the words and acts of each and all of the defendants were false, fraudulent, malicious and slanderous and were made, uttered, published and circulated by the defendants pursuant to their scheme and conspiracy to shame, defame and disgrace the plaintiff.
"The plaintiff is the owner and manager of the Caru Ocean Front Apartments, and as a result of the facts aforesaid, lost prospective tenants of the Jewish faith, who would have rented said apartments. The plaintiff is a writer and lecturer and, as a result of the facts aforesaid, the plaintiff's earning capacity has been greatly impaired. As a result of the facts aforesaid the plaintiff suffers from nervous and digestive disturbances, which required the expenditure of money for drugs and medical attention. As a result of the facts aforesaid, the plaintiff's wife has suffered mental shock, which required large expenditures by the plaintiff for the medical care and treatment of his wife."
The question is whether a complaint containing the allegations above states a cause of action against the defendants.
The gist of a civil action for conspiracy is not the conspiracy itself but the civil wrong which is alleged to have been done pursuant to the conspiracy. Phillips & Sons, Inc., v. Kilgore, 152 Fla. 578, 12 So.2d 465. Therefore, whether the complaint involved in this appeal alleges facts sufficient to state a cause of action must be determined from the standpoint of whether the complaint states a cause of action in either libel or slander. Cooley on Torts, 4th ed., Vol. 1, sec. 74.
It is apparent from an analysis of the complaint that what is submitted to the court is a matter of dissension in a church *244 or social group as to differences of opinion between the plaintiff below and certain members of the Jewish Community Center of Hollywood, Florida, which resulted in the plaintiff being expelled from the Center and banned from the premises.
In respect to such a situation the general rule is that statements and communications made in connection with the various activities of such an organization or group enjoy a qualified privilege. Under the rule it is held that members of such bodies "may report on the qualifications of applicants, prefer charges against fellow members, offer testimony in support of the charges, and make proper publication of any disciplinary action that may be taken, without liability for any resultant defamation, so long as they act without malice." 33 Am.Jur., Libel and Slander, Sec. 132 (emphasis supplied).
The rule relative to qualified privilege is always subject to the limitation, as stated, that in connection with such activities the parties must act without malice. Coogler v. Rhodes, 38 Fla. 240, 21 So. 109; Leonard v. Wilson, 150 Fla. 503, 8 So.2d 12. When a matter which otherwise would be a qualifiedly privileged communication is published falsely, fraudulently and with express malice and intent to injure the persons against whom it is directed, the communication loses its qualifiedly privileged character and the parties lay themselves liable to a suit for damages in an action of libel or slander. However, the malice which vitiates a qualified privilege must be actual and not merely inferred from falsity, etc. See Coogler v. Rhodes, supra; State ex rel. Arnold v. Chase, 94 Fla. 1071, 114 So. 856; McClellan v. L'Engle, 74 Fla. 581, 77 So. 270; Stewart v. Codrington, 55 Fla. 327, 45 So. 809; Myers v. Hodges, 53 Fla. 197, 44 So. 357; Epperson v. Myers, Fla., 58 So.2d 150.
The letter of expulsion dated April 21, 1952, and quoted by appellant in his bill, is the only written matter of an allegedly defamatory character set forth in the complaint. The legality of this act of expulsion was not attacked prior to the bringing of this suit, and cannot be questioned in a proceeding of this nature. See Partin v. Tucker, 126 Fla. 817, 172 So. 89; Epperson v. Myers, Fla., 58 So.2d 150. Since the letter of April 21 contains nothing more than an announcement of expulsion from membership and restriction from the premises of the organization in question, it cannot under the circumstances be considered libelous in nature. By this particular action appellees were simply "making publication of disciplinary action taken." Insofar as the complaint purports to state a cause of action in libel it is, therefore, insufficient.
As appears from the other allegations of the complaint, however, the defendants at various times falsely stated, orally, that the plaintiff was not a Jew; that he was a disgrace to a Jewish organization; that his conduct was scandalous; that he was guilty of evil conduct, and that he was a man of low moral character. While it is true that these statements were apparently made at a meeting of the religious group involved, and hence may have enjoyed a measure of qualified privilege, the allegations of the complaint are further that after the meeting adjourned, one of the defendants, at the direction of the others, stated to the members of the press, for publication purposes, "the accusations against the plaintiff were so bad they could not be repeated"; while still another defendant made the public statement, "He is a bad actor * * * no respectable person will have anything to do with him * * * somebody told me he had to leave Chicago."
It was first contended by appellant that these statements constituted defamation or slander per se, and that his original bill was sufficient to state a cause of action without allegation of special damages. A distinction has been made between libel and slander in that regard. Only certain well-defined classes of imputation as to crime, disease, particular unfitness for office, etc., or unchastity, have been deemed slanderous per se, and in other instances of slander per quod special damages must *245 be set forth. See Newell on Slander and Libel, 4th ed., Sec. 4; Pollard v. Lyon, 91 U.S. 225, 23 L.Ed. 308. Compare Montgomery v. Knox, 23 Fla. 595, 3 So. 211. We do not think it has been made to appear by appellant that the imputations against him naturally or necessarily related to any of the matters specified, and the court below, therefore, quite properly required the amendment of the bill to allege special damages.
In determining the basic question of whether certain language is defamatory, so as to give rise to an action for slander, the words used "are not to be construed or taken in their mildest or most grievous sense, but in that sense in which they may be understood and in which they appear to have been used and according to the ideas which they were adopted to convey to those who hear them or to whom they are addressed." Budd v. J.Y. Gooch Co., 157 Fla. 716, 27 So.2d 72, 74. The publication made should be construed as the common mind would understand it. Cooper v. Miami Herald Pub. Co., 159 Fla. 296, 31 So.2d 382; Richard v. Gray, Fla., 62 So.2d 597; Sharp v. Bussey, 137 Fla. 96, 187 So. 779, 121 A.L.R. 1148.
Viewed in this light, it appears to us that, if proven, the statements allegedly made by the defendants, when considered with the charge that they were false and were fraudulently and maliciously made to defame, degrade and injure the plaintiff, and thereby injure him in his reputation and goods, were of such a character and made under such circumstances as to remove the cloak of privilege and require of the defendants that they answer. Compare Call v. Larabee, 60 Iowa 212, 14 N.W. 237.
The judgment appealed from should be reversed so far as it pertains to count six of the amended declaration, otherwise affirmed.
It is so ordered.
ROBERTS, C.J., and TERRELL and MATHEWS, JJ., concur.