**RUSH–HAMPTON INDUSTRIES, INC., a Florida Corporation, Plaintiff,**

v.

**HOME VENTILATING INSTITUTE, a Trade Association, and Arnold W. Rodin, Defendants.**

**No. 74–306–ORL–CIV–Y.**

United States District Court, M. D. Florida, Orlando Division.

Aug. 3, 1976.

20

R. G. Ross, Pitts, Eubanks, Ross & Rumberger, P.A., Orlando, Fla., for plaintiff.

Robert L. Byman, Chicago, Ill., for defendants.

James A. Lowe, Orlando, Fla., (local counsel), for defendants.

## ORDER

GEORGE C. YOUNG, Chief Judge.

This cause came before the Court for hearing on the motion of the defendants for summary judgment as to both counts of the second amended complaint. Count I of that complaint as it now stands alleges a slander of plaintiff by defendants by virtue of a statement made to the Southern Building Code Congress on or about May 3, 1974 to the effect that the State of Maryland had not approved or had cancelled approval of plaintiff's ductless fan, a representation which allegedly was known to be untrue at the time made or which was made with "reckless disregard for the truth or falsity thereof". By prior order of May 5, 1975, this Court had dismissed allegations of libel arising out of a letter of April 12, 1974 from defendant Rodin to the Florida Department of Business Regulation as failing to state a claim upon which relief might be granted.

Count II of the complaint alleges a violation of Title 15, United States Code §§ 1, 2, 4, 12 and 16. The substance of that count is the alleged concerted efforts by defendants to prevent access by plaintiff to the administrative processes of crucial building code bodies (SBCC,[1] ICBO,[2] BOCA,[3] and FHA[4]). Plaintiff relies on the narrow exception contained in *California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972) to the general rule that attempts to influence the decision making process of legislative or administrative bodies are immune from antitrust suits. See, *U.M.W. v. Pennington,* 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965) and *Eastern Railroad Conf. v. Noerr Motor Freight,* 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1964).

1. Southern Building Code Congress

2. International Conference of Building Officials

### I. The Claim of Slander

The slander complained of in Count I occurred in May of 1974 in an oral communication to the Committee on Approvals of the Southern Building Code Congress [S.B.C.C.]. Defendant Rodin testified in his deposition (pages 102–104) that the remark was part of a prepared speech given before the Committee. The text of that speech was plaintiff's Exhibit No. 20 at defendant Rodin's deposition and reads, in pertinent part:

> "It should be noted that the ductless fan is not allowed as a revision to the Maryland State Plumbing Code . . . On October 24, 1973, the State Plumbing Board reiterated its position that the CA–90 was 'in violation of the State Plumbing Code' and was not permitted 'to be put into the Code as a revision . . .'"

It is uncontested that at the time the speech was made by defendant Rodin, there was in existence a letter from Kenneth L. Samuelson, Assistant Attorney General of the State of Maryland directed to Frederick W. DeJong, the Chairman of the Maryland State Board of Commissioners of Practical Plumbing, and dated February 22, 1974, in which the CA–90 ductless fan was found to be "not subject to regulation under the Maryland Plumbing Code". (Plaintiff's Exhibit 22 to the deposition of Arnold Rodin). Rodin testified that he had no knowledge of the Maryland Attorney General's letter at the time he made the speech to the S.B.C.C. Approval Committee (page 105, deposition of Arnold W. Rodin).

Whether a communication is defamatory at all depends not only upon the thrust of the communication but also upon the context in which it was uttered. Each factual situation is distinct and may call forth different results. *Cf. Diplomat Electric Inc. v. Westinghouse Electric Supply Co.,* 378 F.2d 377 (5th Cir. 1967); *O'Neal v.*

3. Building Officials and Code Administrators International

4. Federal Housing Administration

*Tribune Co.,* 176 So.2d 535 (2d D.C.A.Fla. 1965).

In the context of the debate carried on before the Approval Committee of the S.B.C.C., it is almost inconceivable that the remarks complained of should be considered defamatory at all. It is beyond argument that the remarks cannot be slander in any *per se* sense; and, even assuming the existence of extensive circumstantial props to imbue the communication with a *per quod* defamatory content, Mr. Rodin's statements would be protected by at least a qualified privilege. *Cf. Frieder v. Prince,* 308 So.2d 132 (3d D.C.A.Fla.1975). Where there exists a qualified privilege, as in this case, there is a presumption that defendant Rodin's statements were made without malice.[5] *Appell v. Dickinson,* 73 So.2d 824 (Fla. 1954); *Burris v. Morton F. Plant Hospital,* 204 So.2d 521 (2d D.C.A.Fla.1967). Moreover, "malice" in the context of a qualified privilege must be *actual* malice, i. e., "ill will, hostility and an evil intention to defame and injure". 20 Fla.Jur. Libel & Slander § 52. "Malice" in this sense cannot be inferred simply from the falsity of the statements. *Loeb v. Geronemus,* 66 So.2d 241 (Fla.1953); also see *Frieder v. Prince, supra,* 20 Fla.Jur. Libel & Slander, §§ 52–54.

Plaintiff in its memorandum opposing summary judgment contends that the existence or non-existence of malice is a question which the Court should not resolve on a motion for summary judgment, since "the questions of malice and intent are singly within the minds of the parties . . . ." (Memorandum of plaintiff at pp. 3–4). While the Court recognizes as a general proposition that at a trial the demeanor of the witnesses themselves and the opportunity for cross-examination might well have a bearing upon the jury's decision, the burden of the plaintiff on summary judgment is not satisfied by legal propositions unsupported by any part of the record. None of the references indicated by plain-

tiff, either singly or together, suffice to raise any plausible inference of malice. As Professor Moore has stated in his treatise:

" . . . That movant's uncontradicted and unimpeached proofs need not be taken as true is well established. It is clear, however, that the opposing party is not entitled to have the motion denied on the mere hope that at trial he will be able to discredit movant's evidence; he must, at the hearing, be able to point out to the court something indicating the existence of a triable issue of a material fact." 6 *Moore's Federal Practice* [Part 2], ¶ 56.-15[4]. This is especially so where the presumption is against the existence of malice.

## II.   *The Antitrust Claim.*

The plaintiff is engaged in the manufacture, distribution, and sale of ductless bathroom fans. Defendant Home Ventilating Institute, Inc., is a trade association whose members are engaged in either the manufacture or sale of ducted bathroom fans. Defendant Arnold W. Rodin is the Executive Director of Home Ventilating Institute, Inc.

It is uncontested that there are three regional building code organizations whose primary function is to "promulgate model building codes and building standards for use by state and local entities". These organizations, the Southern Building Code Congress [S.B.C.C.], the International Conference of Building Officials [I.C.B.O.], and the Building Officials and Code Administrators International [B.O.C.A.], are each composed of state and local building code officials, and have the additional function of approving or disapproving specific products as they conform or fail to conform to the standards set by the respective organizations. It is also uncontested by the defendants that approval by one of these organizations is "tantamount to approval by numerous governmental entities" in its respective region, as the standards and products approved are often adopted by reference from

---

5. "In the absence of malice, a publication may be qualifiedly privileged, even though it is not true . . . ." 20 Fla.Jur. Libel and Slander

§ 61, pg. 583; *See also Coogler v. Rhodes,* 38 Fla. 240, 21 So. 109 (1897).

those standards and products already reviewed by the organization. Plaintiff has also attempted to gain approval for its product from the Federal Housing Administration [FHA].

The allegations made by plaintiff are essentially that defendants have conspired to destroy or weaken the plaintiff as a competitor in the bathroom fan market and to secure a monopoly for members of Home Ventilating Institute, all of whom manufacture or sell ducted bathroom fan equipment. The manner in which Home Ventilating Institute allegedly sought to accomplish that object was by means of organizing and financing opposition to every application for approval or reapproval of plaintiff's product before S.B.C.C., I.C.B.O., B.O.C.A. and FHA. The alleged intent of Rodin and Home Ventilating in opposing plaintiff's product was "not to invoke the legitimate processes of said organizations, but rather to discourage and ultimately prevent plaintiff from effectively invoking said processes in an effort to obtain approvals and/or reapprovals for its products." Alternatively, plaintiff alleges that the intent of Rodin and Home Ventilating was to "unduly delay approval or reapproval of plaintiff's product and to cause plaintiff to incur heavy and extraordinary expense in order to obtain any such approvals or reapprovals". The allegations are also that defendants have repeatedly and continuously made statements to S.B.C.C., I.C.B.O., B.O.C.A., and FHA concerning the merits of plaintiff's product, which statements "were and are unsupported by any objective research."

While this Court has previously ruled that the complaint states a claim under *California Motor Transport v. Trucking Unlimited,* 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972), the posture of the case on a motion for summary judgment is distinctly different. Although the defendants must show the absence of a genuine issue of material fact and while every inference will be resolved in the plaintiff's favor, the plaintiff must still come forward with something to show that a triable issue of fact exists.

In *Eastern Railroad Conference v. Noerr Motor Freight,* 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961), the Supreme Court held that "no violation of the [Sherman] Act can be predicated upon mere attempts to influence the passage or enforcement of laws". 365 U.S. at 135, 81 S.Ct. at 528, 5 L.Ed.2d at 470. This conclusion was predicated upon two fundamental considerations:

(1) "In a representative democracy such as this, these branches of government act on behalf of the people and, to a very large extent, the whole concept of representation depends upon the ability of the people to make their wishes known to their representatives. To hold that the government retains the power to act in this representative capacity and yet hold, at the same time, that the people cannot freely inform the government of their wishes would impute to the Sherman Act a purpose to regulate, not business activity, but political activity, a purpose which would have no basis whatever in the legislative history of that Act."

(2) "The right of petition is one of the freedoms protected by the Bill of Rights, and we cannot, of course, lightly impute to Congress an intent to invade these freedoms."

365 U.S. at 137, 81 S.Ct. at 530–531, 5 L.Ed.2d at 471. See also *United Mine Workers v. Pennington,* 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965).

In the same case, however, the Supreme Court did recognize that there would be some instances where the alleged conspiracy "is a mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor and the application of the Sherman Act would be justified." 365 U.S. at 144, 81 S.Ct. at 533, 5 L.Ed.2d at 475.

This "sham" exception was the basis for the Court's 1972 decision in *California Motor Transport v. Trucking Unlimited,* 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642. *California Motor Transport* distinguishes between those concentrated efforts which are genuinely directed at influencing public officials and those efforts which are intended

to bar competitors from "meaningful access to adjudicatory tribunals and so to usurp that decisionmaking process." 404 U.S. at 512, 92 S.Ct. at 612, 30 L.Ed.2d at 647. Except as to the qualifications noted by Justice Douglas in the *California Motor Transport* case as respects adjudicatory tribunals, the contours of the *Noerr-Pennington* doctrine remain intact. See *Metro Cable Co. v. CATV of Rockford, Inc.,* 516 F.2d 220, 227–228 (7th Cir. 1975). When an adjudicatory process is involved, conduct such as deception and misrepresentation "may demonstrate that the defendants' activities are not genuine attempts to use the adjudicative process legitimately and may therefore result in illegality, including illegality under the antitrust laws." *Metro Cable, supra* at 228.

While the exact characterization which ought to be applied to S.B.C.C., I.C.B.O. and B.O.C.A. is unclear, it is apparent and undisputed by either party that they perform functions which are both legislative in nature (drafting of model codes) and adjudicatory in nature (approving specific products). Indeed, defendants themselves characterize these organizations as "quasi-judicial governmental agencies." (Memorandum of defendants in support of summary judgment, page 10). Perhaps a more nearly correct characterization of these organizations would be that of quasi-administrative bodies. But regardless of their designations, their functions were such that plaintiff will have to show in order to recover under the antitrust laws that defendants' intentions were to deprive plaintiff of meaningful access to the code making bodies and FHA.

Even assuming the accuracy of the assertions of H. Rushton Bailey in his deposition that (1) FHA/HUD officials indicated that his ductless fan would not be approved because of the application of political pressure from Home Ventilating; (2) that rumors concerning the non-approval of his product had caused the loss of orders and sales in Florida and had instigated threats of a lawsuit in Maryland; and (3) that S.B.C.C. officials had commented to him that "Approval of the Rush-Hampton product was not worth the difficulties when Home Ventilating opposed it;" the showing made by plaintiff falls short of that necessary under *California Motor Transport* to ward off a motion for summary judgment.

■ The acts proscribed by *California Motor Transport* and which would be proscribed by the "sham" exception in *Noerr* were those whose magnitude rose to the level of an abuse of the administrative process. The fact that opposition is strongly voiced in an administrative hearing carries in and of itself no implication of an intent to interfere with the competitor's business relations, even if the opposition contains misstatements of fact or incompletely researched or unjustified and argumentative conclusions. There must be some clearly established pattern of misrepresentation, or of initiation of baseless legal proceedings, or of covert pressures and tactics designed to deprive the administrative body of its ability to function independently before *Noerr* and *California Motor Transport* can be invoked: e. g., *Woods Exploration & Pro. Co. v. Aluminum Co. of America,* 438 F.2d 1286 (5th Cir. 1971); *Whitten v. Paddock Pool Builders, Inc.,* 424 F.2d 25, 28 (1st Cir. 1970); *Lektro-Vend Corp. v. Vendo Corp.,* 403 F.Supp. 527 (N.D.Ill.1975). At most, plaintiff has established that defendants might have been negligent in researching the ductless fan's effectiveness. If an intent to interfere in a competitor's business relations can be inferred from the facts as developed so far in this case, then *Noerr* and *Pennington* will be of no practical significance. This Court cannot find that that was the intention of *California Motor Transport.*

A complete review of the documents (pleadings, transcripts of depositions and the exhibits) offered in support of the motion for summary judgment and opposition thereto, cause this Court to conclude that there is no disputed issue of material fact as to either the claim of slander or the claim of violation of antitrust laws.

As noted above, in connection with the discussion of the claim in Count I (slander) there is no evidence tendered by the plain-

tiff to support its contention of malice. Without that ingredient, slander cannot be proven in view of the challenged statement having been given in the context of a qualified privilege.

■ It is clear that Home Ventilating Institute was endeavoring to preserve before code making agencies and code recommending organizations the construction of the meaning of a ventilating device as one that would require a duct to the outside from a bathroom. This they had the right to do; the antitrust laws do not prevent presentation of arguments before legislative, judicial and administrative bodies even though such arguments and presentations, if successful, may adversely affect some business, industry or occupation. Accordingly, there is no disputed issue of material fact as to Count II and as to that count summary judgment should be granted.

It is therefore, in accordance with the above conclusions

ORDERED that the defendants' motion for summary judgment as to both Counts I and II of the second amended complaint will be granted and this case dismissed with prejudice by separate judgment entered simultaneously herewith.