**Alfred C. ROSENBERG, Plaintiff,**

v.

**AMERICAN BOWLING CONGRESS, Defendant.**

No. 83–630–Civ–J–GCY.

United States District Court, M.D. Florida, Jacksonville Division.

June 21, 1984.

Martin J. Mickler, Jacksonville, Fla., for plaintiff.

Robert E. Warren, Jacksonville, Fla. and Michael, Best & Friedrich, Milwaukee, Wis., for defendant.

## ORDER

GEORGE C. YOUNG, Senior District Judge.

This cause is before the Court upon Defendant's Renewed Motion for Summary Judgment. Defendant's original motion for summary judgment, filed January 25, 1984, was denied by this Court, the Honorable Susan H. Black, in an order dated May 11, 1984. *See also* Order of March 1, 1984. This case having been transferred to the undersigned for the purposes of conducting a trial during the term of May 29, 1984, the Court held a hearing in chambers at approximately 11:30 A.M. on May 30, 1984 to discuss various pretrial matters. The hearing was recorded by a court reporter and counsel for both sides were present. During the hearing, counsel for defendant American Bowling Congress made an *ore tenus* motion for reconsideration of the order denying summary judgment. The Court having reviewed the memoranda and other submissions previously filed in connection with the initial motion for summary judgment, and finding that the motion had probable merit, the Court set a hearing for oral argument upon the motion for 4:00 P.M. the same day. At the latter hearing, the Court heard argument from both sides upon the motion and upon whether the Court could properly entertain the motion. In addition, plaintiff made an oral motion for a continuance. The Court then denied plaintiff's motion for continuance and announced that it would grant defendant's renewed motion for summary judgment, reciting upon the record various reasons therefor.

 The Court initially concludes that reconsideration of defendant's motion for summary judgment was appropriate under the circumstances. Judge Black's order denying summary judgment was not "the law of the case"; rather it was merely an interlocutory order which the Court could modify or rescind at any time prior to the final decree. Furthermore, the Court does not believe that granting plaintiff's motion for continuance would have served any useful purpose. The issues involved in defend-

ant's motion for reconsideration are identical to those involved in the initial motion for summary judgment and closely related to issues involved in other matters which have arisen in this litigation. The parties fully availed themselves of their opportunity to file submissions and legal memoranda in support of their respective positions concerning the initial motion for summary judgment, and it was clear that plaintiff did not seek the continuance in order to file further factual submissions. The Court, accordingly, feels that the ten day requirement set forth in Federal Rule of Civil Procedure 56(c) was not applicable to foreclose reconsideration of the motion for summary judgment under the circumstances of this case. Because the undersigned judge was visiting Jacksonville from Orlando only during the week of May 29, 1984 and the trial in this cause was set to commence on May 31, 1984, resolution of the motion on May 30, 1984 was appropriate to spare the parties and this Court the time and expense of a fruitless trial.

The Court therefore turns to the merits of the motion for summary judgment. Plaintiff's claim against the defendant American Bowling Congress (ABC) is founded upon his allegation that the ABC Legal Committee was wrong in its determination that plaintiff had failed to verify the bowling league's account on a monthly basis as required by ABC Rule 102c. Based on this determination, the ABC Legal Committee acted to suspend plaintiff's ABC membership for a period of one year, pursuant to ABC Rule 30b. The ABC communicated its decision and findings to the Greater Jacksonville Bowling Association (GJBA) in a letter dated March 10, 1982. Plaintiff's complaint alleges that the actions of the ABC tortiously interferred with his advantageous business relationship with the GJBA (Count II), and that the statements contained in the March 10, 1982 letter were libelous per se (Count III).[1]

It is clear that the "tortious interference" by ABC alleged in Count II consists in its decision to suspend plaintiff from its membership for one year, which plaintiff contends was "wrongful". The suspension, of itself, automatically resulted in the suspension of plaintiff from his paid position with the GJBA (Complaint, Paragraph 7) and effectively prohibited him from participating in ABC-sponsored tournaments and events. (Complaint, Paragraphs 14–15). It is well settled under Florida law, however, that the governing body of a private membership organization is the final arbiter of the sufficiency of causes for suspension of a member, and that courts may not properly conduct a collateral inquiry into the merits of such an organization's decision to suspend a member. *E.g., Everglades Protective Syndicate v. MaKinney*, 391 So.2d 262, 265 (Fla. 4th DCA 1980); *State ex rel. Barfield v. Florida Yacht Club*, 106 So.2d 207, 211 (Fla. 1st DCA 1958); *See Loeb v. Geronemus*, 66 So.2d 241, 244 (Fla.1953). Apparently acknowledging this restriction imposed upon Florida courts, plaintiff asserted the following in his responsive memorandum, filed March 16, 1984:

> "Plaintiff is *not* seeking *de novo* review of defendant's internal actions with respect to one of its members. Plaintiff is *not* seeking to get the Court to substitute its judgment for that of the defendant as to whether or not defendant should have imposed a suspension. Plaintiff is *not* saying that he did not get a proper hearing before a proper committee of defendant."

Plaintiff's counsel made numerous assertions to the same effect during hearings before this Court. Unquestionably, however, the only interference by ABC alleged in Count II was completed by its "wrongful suspension" of plaintiff from ABC membership. Because Florida law prohibits a judicial inquiry into the merits of a decision by the ABC to suspend a member, and plaintiff has repeatedly denied that he

---

**1.** Count I of plaintiff's amended complaint sought injunctive relief, and was dismissed as moot by the presiding state circuit judge, prior to the removal of this case to federal court, in an order dated June 3, 1983.

seeks such an inquiry, it follows that Count II of the complaint, for tortious interference with an advantageous business relationship, is devoid of substance. The Court, therefore, will grant defendant's motion for summary judgment as to that count.

Turning now to Count III, plaintiff's action for defamation, the alleged libel of plaintiff by the ABC consisted of a letter, dated March 10, 1982, from Jack A. Mordini, Manager of the ABC Rules Department, to Thomas C. Watson, President of the GJBA, which set forth the decision of the ABC Legal Committee to suspend Mr. Rosenberg for one year and the Committee's findings which formed the basis for that decision. Plaintiff's position, in essence, is that although he does not seek redetermination of the ABC Legal Committee's decision to terminate his membership, the Committee's underlying finding (i.e., that he had failed to fulfill his duty as a league president to make monthly verifications of the league account) was incorrect, and that publication of that finding to the GJBA constituted defamation which is per se actionable.

Viewing the evidence and all factual inferences therefrom in the light most favorable to the plaintiff, for the reasons stated below, the Court finds that there is no genuine issue as to any material fact and that the defendant is entitled to judgment as a matter of law.

In alleging that he was defamed in the letter of March 10, 1982, plaintiff seeks to isolate the following language:

"... when the shortage first occurred it was not noticed or reported and Mr. Rosenberg's failure to do so resulted in the league's sustaining a loss of $6,365.81."

Plaintiff claims this statement was false and defamatory. However, when this language is read in its full context within the original letter, it is evident that the language was intended merely as a report of the factual finding of the ABC Legal Committee upon which it based its decision to suspend Mr. Rosenberg.[2]

In a defamation action such as this, truth is a defense under Florida law. *See Florida Publishing Co. v. Lee*, 76 Fla. 405, 80 So. 245 (1918). There is no doubt, and plaintiff does not dispute, that the ABC Legal Committee made the finding that plaintiff failed to verify the league account. The letter from Mr. Mordini to Mr. Watson merely confirms that fact. Thus, the statement in the letter is true— i.e., it accurately represents what the Committee found—and, as such, cannot form the basis of a defamation action.

In the alternative, construing the statement in the letter, out of context, as an unqualified assertion that Mr. Rosenberg in fact failed to verify the league accounts, and assuming *arguendo* that the statement so construed was false, the Court nonetheless finds that this communication cannot, as a matter of law, form a basis for recovery in a suit for defamation. The Rules of the ABC provide that when the ABC takes disciplinary action against one of its members "[n]otification of the action shall be filed with the local association's secretary and also appropriate league or tournament officials." ABC Rule 31(2). This rule, by which plaintiff agreed to be bound when he joined the ABC (*See* GJBA Constitution, Preamble), plainly contemplates the type of publication upon which plaintiff bases his defamation suit.[3] Plain-

---

**2.** The letter states, in relevant portion:

"... *In its review of the total file, the Committee noted* that a 100% payment could not be made by bonding company because the league's savings account had not been verified monthly as required. *In that regard,* when the shortage first occurred it was not noticed or reported and Mr. Rosenberg's failure to do so resulted in the league sustaining a loss of $6,365.81. The Committee has consistently held that when a league president fails to verify the league account, that he be suspended from membership in the American Bowling Congress for a period of one year.

*The Committee asked that we give you this information so you would know the reason for their decision in this case.*" (emphasis added).

**3.** The letter's recitation of the underlying factual findings, along with the fact of plaintiff's one year suspension, was particularly appropriate in

tiff thus consented to the type of publication that resulted from ABC's suspension hearing. By virtue of that consent, ABC possessed an absolute privilege to publish to the GJBA the factual determinations upon which the Legal Committee based its decision to suspend Mr. Rosenberg. *See* Restatement, 2d, Torts § 583, Comment d and illustration 3.

 Furthermore, even if the alleged defamatory statements were not absolutely privileged by virtue of plaintiff's consent, the statements enjoy a qualified privilege by virtue of their having been made in connection with the activities of a private membership organization. Under Florida law, statements and communications relating to qualifications of applicants and disciplinary action in connection with the activities of such organizations are qualifiedly privileged communications so long as they are made without malice. *Loeb v. Geronemus*, 66 So.2d 241, 244 (Fla.1953). The malice which vitiates a qualified privilege must be actual malice, i.e., ill will, hostility and an evil intention to defame and injure, which cannot be inferred simply from the falsity of the statements. *Rush Hampton Industries, Inc. v. Home Ventilating Institute*, 419 F.Supp. 19, 22 (M.D.Fla.1976). Plaintiff has neither alleged nor made the slightest showing that the statements contained in the letter dated March 10, 1982 were made with actual malice.

 Finally, it is significant to the Court that the alleged false and defamatory findings published in the letter pertain specifically to whether plaintiff performed the duties of his office in accordance with the rules of the ABC. Plaintiff, in essence, seeks a *de novo* review of the determination of the ABC Legal Committee that he failed to fulfill his duty under ABC Rule 102c to verify the league account.[4] Yet plaintiff does not dispute that the ABC Legal Committee was the appropriate tribunal for making such a determination, and

that the Committee followed established and proper procedures in plaintiff's case. The Court believes that the courts of Florida would apply the long established rule prohibiting judicial inquiry into the merits of a membership organization's decision to suspend a member (see *ante*, pp. 550–551) so as to foreclose plaintiff's claim for damages in Count III, notwithstanding the fact that the claim is advanced in the guise of a defamation suit. In other words, because the Committee's findings go directly to whether plaintiff satisfactorily performed his official duties in the organization, they were matters solely for determination by the organization itself, and may not be collaterally challenged in an action for defamation. *See Berman v. Shatnes Laboratory*, 350 N.Y.S.2d 703, 704, 43 A.D.2d 736 (1973). *Compare Loeb v. Geronemus*, 66 So.2d at 244–45.

For the foregoing reasons, it is

ORDERED that the defendant's motion for summary judgment as to Counts II and III of plaintiff's amended complaint be and is hereby granted and this case will be dismissed with prejudice.

---

this case because the Committee's decision to suspend plaintiff was contrary to the recommendation of the GJBA that plaintiff be exonerated of all charges.

**4.** Indeed, at the hearings of May 30, 1984, plaintiff's counsel stated that plaintiff's purpose in bringing this action was to get *de novo* review of this determination by the ABC Legal Committee.