DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**THE NAKED LADY RANCH, INC.,** a Florida not-for-profit corporation,
Appellant,

v.

**MICHAEL WYCOKI, JR.,**
Appellee.

No. 4D18-2068

[ November 20, 2019 ]

Appeal from the Circuit Court for the Nineteenth Judicial Circuit, Martin County; Barbara W. Bronis, Judge; L.T. Case No. 43-2016CA281.

David C. Borucke of Cole Scott & Kissane, P.A., Tampa, and Steven L. Brannock of Brannock & Humphries, Tampa, for appellant.

Jonathan Mann and Robin Bresky of the Law Offices of Robin Bresky, Boca Raton, for appellee.

TAYLOR, J.

Appellant, the Naked Lady Ranch, Inc. ("NLRI"), appeals an adverse final judgment entered following a bench trial in its action for declaratory relief, nuisance, and injunctive relief. This case arose out of NLRI's suspension and termination of the defendant, Michael Wycoki, as a member. We hold that the trial court erred in conducting a de novo inquiry into the merits of NLRI's disciplinary decision, and that the defendant's membership was suspended and terminated pursuant to a procedure that was fair and reasonable and carried out in good faith as required by section 617.0607(1), Florida Statutes. We therefore reverse for entry of judgment in favor of NLRI on its claims for declaratory and injunctive relief.[1]

The Naked Lady Ranch is an aviation community in Martin County that consists of fifty private residences on parcels of at least five acres. By stipulation, the parties agreed that the covenants in the Declaration do not run with the land.

---

[1] At trial, NLRI withdrew its claim for monetary damages in the nuisance count.

NLRI is a not-for-profit corporation that was incorporated to provide "physical facilities of private roads and of aircraft runways" for its members. To be a member of NLRI, a person must own five acres of land within the community, make a written application to NLRI's Board, and receive Board approval. NLRI's governing documents do not contain a formal, written disciplinary procedure.

By signing his membership application, the defendant agreed that he "may be suspended" if his "actions violate the trust of acceptable airport operations," and that "commercial operations are not permitted" at the NLRI facilities.

During his membership in NLRI, the defendant paid a private pilot to fly his twin-engine airplane out of the NLRI airport early in the morning about once or twice a week, transporting himself and several co-workers to work at medical clinics around the state. The co-workers were paid by their employer for the time they spent flying to work.

NLRI's counsel sent the defendant a letter informing him that NLRI's Board had called a meeting to review his membership status. The letter alleged that the defendant was using the NLRI facilities for commercial operations.

At the meeting, the defendant was represented by counsel. The meeting included opening statements, witnesses, evidence, and cross-examination. Following the meeting, the Board suspended the defendant's membership, finding that he was conducting a commercial activity and was operating a "for hire aircraft."

NLRI's counsel sent the defendant's counsel a letter inviting him to provide additional "evidence, if any, that he is not conducting a commercial activity." The letter also warned that, should the defendant continue to use the runways during the suspension, the Board would conduct a meeting to terminate his membership.

The defendant continued to take early morning flights out of the NLRI airport during his suspension. The Board held another meeting on the defendant's membership status. The defendant's attorney was initially present, but left shortly after the meeting started. Following the meeting, the Board terminated the defendant's membership due to his continued use of the NLRI facilities during his suspension, his commercial use of the facilities, and the alleged nuisance created by his early morning departures in a twin-engine plane.

The defendant continued to fly out of the NLRI airport even after the termination of his membership, prompting NLRI to file this suit against him.

Following a lengthy bench trial, the trial court entered a final judgment in favor of the defendant. The trial court ruled that: (1) the governing documents "contain no procedure or authorization for Board suspension or termination of a property owner's membership rights, including the right to use the airport facility"; (2) NLRI did not make a prima facie case that the Board was authorized to either suspend or terminate the defendant's membership in NLRI; (3) NLRI did not establish a prima facie case of nuisance; and (4) NLRI did not establish a prima facie case that the defendant's activities constituted the operation of a "for hire" aircraft or "commercial operations." This appeal ensued.

On appeal, NLRI primarily argues that the trial court's de novo review of NLRI's decision to suspend and terminate the defendant's membership is contrary to the rule of judicial deference to the decisions of voluntary membership organizations. We agree.

Pure questions of law are subject to de novo review. *S. Baptist Hosp. of Fla., Inc. v. Welker*, 908 So. 2d 317, 319 (Fla. 2005).

Under the rule of judicial deference, courts ordinarily will not intervene in the internal affairs of voluntary organizations. *Rewolinski v. Fisher*, 444 So. 2d 54, 58 (Fla. 3d DCA 1984). It is well-established "that the governing body of a private membership organization is the final arbiter of the sufficiency of causes for suspension of a member, and that courts may not properly conduct a collateral inquiry into the merits of such an organization's decision to suspend a member." *Fla. Youth Soccer Ass'n v. Sumner*, 528 So. 2d 4, 5 (Fla. 5th DCA 1988) (quoting *Rosenberg v. Am. Bowling Cong.*, 589 F. Supp. 547, 550 (M.D. Fla. 1984)). Thus, "courts do not review disciplinary actions of social clubs," including voluntary membership clubs tied to homeownership. *Shumrak v. Broken Sound Club, Inc.*, 898 So. 2d 1018, 1020 (Fla. 4th DCA 2005).

Applying the rule of judicial deference, we conclude that the trial court erred in conducting a de novo review of the merits of NLRI's decision to suspend and terminate the defendant's membership. For example, the trial court should not have considered the merits of the Board's determination that the defendant's activities constituted commercial operations. Instead, the trial court should have limited its inquiry to two issues: (1) whether the Board complied with its own governing documents; and (2) whether the defendant was suspended and terminated pursuant

to a procedure that was fair and reasonable and carried out in good faith. *See* § 617.0607(1), Fla. Stat. (2015) ("A member of a corporation may not be expelled or suspended, and a membership in the corporation may not be terminated or suspended, except pursuant to a procedure that is fair and reasonable and is carried out in good faith."); *Boca W. Club, Inc. v. Levine*, 578 So. 2d 14, 16 (Fla. 4th DCA 1991) (where a member has been afforded notice and an opportunity to be heard prior to a disciplinary action, a justiciable issue still remains as to whether "the board's action comported with the terms of the bylaws and regulations of the club").

As to the first issue, the record confirms that the Board complied with its own governing documents.  We reject the defendant's argument that the Board was powerless to suspend a member once admitted.  The Bylaws broadly grant the Board "all powers necessary or convenient to effect any and all of the purposes for which the corporation is organized and as granted to it by common law, the Florida Statutes, the Declaration, the Articles of Incorporation, and these Bylaws."  The Florida Statutes, in turn, authorize a not-for-profit corporation, such as NLRI, to suspend or terminate a member who fails to comply with the terms and conditions of membership, so long as the suspension or termination is pursuant to a procedure that is fair and reasonable and carried out in good faith.  *See* § 617.0607(1), Fla. Stat. (2015); § 617.0601(7), Fla. Stat. (2015) ("Where the articles of incorporation expressly limit membership in the corporation to property owners within specific measurable geographic boundaries and where the corporation has been formed for the benefit of all of those property owners, no such property owner shall be denied membership, *provided that such property owner once admitted to membership, shall comply with the terms and conditions of membership.*" (emphasis added)).

The defendant argues that his suspension and termination from NLRI was unauthorized because he satisfied the only terms and conditions of membership in NLRI—namely, ownership of at least five acres of land in the community and the Board's approval of his membership application.  We disagree.  The defendant specifically agreed in his membership application that he "may be suspended" if his "actions violate the trust of acceptable airport operations" and that "commercial operations are not permitted" at the NLRI facilities.  The "terms and conditions" of membership include the terms that the defendant agreed to in his membership application.  Thus, NLRI did not violate its own governing documents when it disciplined the defendant based on its finding that he violated the terms of his membership by engaging in commercial activity.

The second justiciable issue, then, is whether NLRI suspended and terminated the defendant's membership pursuant to a procedure that was

4

fair and reasonable and carried out in good faith as required by section 617.0607(1), Florida Statutes.

This court has held that the plain language of section 617.0607(1) "does not require notice and a hearing before a not for profit corporation terminates a member." *Fla. Research Inst. for Equine Nurturing, Dev. & Safety, Inc. v. Dillon*, 247 So. 3d 538, 543 (Fla. 4th DCA 2018). In *Dillon*, the corporation's bylaws allowed the board to suspend or expel a member "for 'just cause' after a vote is held at any regular, special or emergency meeting if deemed in the best interest of the organization," and the corporation's rules allowed the board to terminate a member "immediately and without warning" if the board determined that the member had "intentionally tried to undermine the organization." *Id.* The board held an emergency meeting without providing notice to the member and voted unanimously to terminate the member for cause. *Id.* at 541. On appeal, we held that the corporation's bylaws and rules set forth a termination procedure that was fair and reasonable and was carried out in good faith under section 617.0607(1), explaining that the member's conduct provided the board with "just cause" to find that she was intentionally trying to undermine the organization. *Id.* at 543–44.

Here, we conclude as a matter of law that NLRI's procedure for suspending and terminating the defendant's membership was fair and reasonable and carried out in good faith. NLRI undeniably gave the defendant notice of the allegations and an opportunity to be heard, which went far beyond the procedure this court approved in *Dillon*. Moreover, the defendant's various criticisms of NLRI's procedure are insufficient to give rise to a finding that NLRI acted in bad faith.

Contrary to the defendant's argument, nothing in section 617.0607(1) requires that the procedure for suspending or terminating a member be a preexisting written procedure. Instead, the statute merely requires that the procedure be fair and reasonable and carried out in good faith. We hold that NLRI's procedure met that standard.

Based on the foregoing, we reverse and remand for entry of judgment in NLRI's favor.

*Reversed and Remanded.*

MAY and FORST, JJ. concur.

\*          \*          \*

5

*Not final until disposition of timely filed motion for rehearing.*